**Joan SMITH, Appellee,**

v.

**BOARD OF EDUCATION OF the ME-DIAPOLIS SCHOOL DISTRICT and the Mediapolis Community School District, Appellants.**

No. 68771.

Supreme Court of Iowa.

May 18, 1983.

Rehearing Denied June 9, 1983.

Robert A. Engberg, of Pryor, Riley, Jones & Aspelmeier, Burlington, for appellants.

James L. Sayre and Gerald L. Hammond, of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McGIVERIN, LARSON and SCHULTZ, JJ.

LARSON, Justice.

The superintendent of the Mediapolis Community School District, which was

faced with declining enrollment and shrinking state aid, sought to terminate the teaching contract of the plaintiff as a part of the district's staff-reduction program. Following Smith's request, a "private hearing" under section 279.16 was held by the school board, which accepted the superintendent's recommendation and terminated her employment. On her appeal to an adjudicator, section 279.15, the board's determination was affirmed. On petition for judicial review, section 279.18, the district court reversed, ordering Smith's reinstatement, and the school district appealed. We reverse and remand.

### I. *Legal Principles.*

The teacher-termination procedures of our statutes underwent a substantial overhaul in 1976. *See Bruton v. Ames Community School District,* 291 N.W.2d 351, 354–55 (Iowa 1980). As a result of these changes, procedures for nonrenewal of teachers' contracts (as contrasted to discharge under section 279.27) now require "just cause" hearing procedures whether the nonrenewal is based upon a fault of the teacher or, as here, circumstances not attributed to the teacher at all.

Section 279.15(1) requires notice to the teacher, not later than March 15, of the superintendent's recommendation of termination. Section 279.15(2) prescribes the form and contents of the notice:

> Notification of recommendation of termination of a teacher's contract shall be in writing and shall be personally delivered to the teacher, or mailed by certified mail. The notification shall be complete when received by the teacher. The notification and the recommendation to terminate *shall contain a short and plain statement of the reasons, which shall be for just cause,* why the recommendation is being made. The notification shall be given at or before the time the recommendation is given to the board.

(Emphasis added.) No issue is raised here about the procedural steps for termination; only the issue of whether "just cause" for termination was established by the superin-

tendent in his presentation to the school board.

In *Board of Education of Fort Madison Community School District v. Youel,* 282 N.W.2d 677, 679–81 (Iowa 1979), we discussed the procedure under the then-recent amended termination statutes. The burden of proof of "just cause" is, of course, upon the superintendent. If the board concludes he has carried that burden, and adopts his recommendation, the teacher must then demonstrate, through an appeal to an adjudicator, section 279.17, or upon judicial review, section 279.18, that the board committed error in adopting the recommendation. *Youel,* 282 N.W.2d at 680.

On appeal to this court, our scope of review is at law for correction of errors upon one or more of the seven grounds set forth in section 279.18. The basic ground relied upon here is that the board's action was "[u]nsupported by a preponderance of the competent evidence in the record made before the board and the adjudicator when that record is viewed as a whole" under section 279.18(6). A collateral issue, the refusal of the superintendent, on grounds of alleged confidentiality under Iowa Code chapter 68A, to furnish information about other teachers' qualifications, will be discussed separately.

### II. *Evidence of Just Cause.*

The district court concluded that the decision of the board to terminate the contract of the plaintiff was "not supported by competent evidence when viewed as a whole," that the "record fail[ed] to establish the existence of just cause," and that the decision of the district and the adjudicator was "not supported by a preponderance of the competent evidence when viewed as a whole."

Section 279.15 provides that the notification by the superintendent that he intends to recommend termination of the teacher's contract "shall contain a short and plain statement of the reasons, which shall be for just cause" why the recommendation for termination is being made to the board. The evidence at the board hearing is limited

to the reasons stated in the notice. Iowa Code § 279.16.

In the present case, the superintendent gave the following reasons for Smith's termination:

1. Lack of funding due to declining enrollment.

2. Lack of funding due to recent legislative action.

3. Unavoidable budget limitations.

4. Compliance with staff reduction procedures and master agreement.

The parties do not dispute that the first three reasons given by the superintendent are supported by the record. Indeed, both the adjudicator and the district court found that there was no argument advanced challenging those findings. Rather, the dispute involves only the fourth reason given for terminating Smith's contract: "Compliance with staff reduction procedures in the master agreement."

The master agreement provided that if necessary staff reduction could not be accomplished by attrition or reassignment,

[t]he employer will base the decision regarding the employee(s) to be terminated on the needs of the district and the skill, ability, competence, certification, qualifications and experience (in and out of the district) of professional employees relative to available work. If a choice must be made between two or more professional employees who are judged by the employer to meet the needs of the district and to be equal in skill, ability, competence, certification, qualifications and experience relative to available work, preference will be given to the professional employee(s) with the greater continuous length of service in the Mediapolis School District.

Under the master agreement, therefore, the existence of "just cause" for termination of a teacher must turn on whether the superintendent adequately considered "the needs of the district and the skill, ability, competence, certification, qualifications and experience (in and out of the district) of professional employees relative to available work...."

In this connection, we must point out the distinction between "just cause" for *discharge* of a teacher under section 279.27, or nonrenewal of a contract under section 279.15 based on a defect in a teacher's performance on one hand, and "just cause" for nonrenewal based upon reasons not personal to the teacher, such as declining enrollment or budget constraints, on the other. "Just cause" for the latter purpose may be based upon a district's personnel and budgetary requirements and does not necessarily require evidence of a teacher's faults. *See Briggs v. Board of Directors of Hinton Community School District,* 282 N.W.2d 740, 742 (Iowa 1979); *Youel,* 282 N.W.2d at 680. In a staff-reduction termination, such as we have here, the only inquiry as to the qualifications of a particular teacher is for comparative purposes to decide which of several prospects will be terminated.

We must, of course, be wary of any "subterfuge by which an unscrupulous school board would use a fictitious necessity for staff reduction as a pretext for discharging a teacher." *Hagarty v. Dysart-Geneseo Community School District,* 282 N.W.2d 92, 98 (Iowa 1979). A court must also be assured the decision to terminate is not the result of arbitrariness or capriciousness on the part of the superintendent or board. In the absence of these abuses, however, recommendations as to who must be terminated in these circumstances must be largely based upon the informed judgment of the superintendent. The master agreement between the district and its teachers recognizes this reality. It provides that

[i]f a choice must be made between two or more professional employees *who are judged by the employer* to meet the needs of the district and to be equal in skill, ability, competence, certification, qualifications and experience relative to available work, preference will be given to the professional employee(s) with the greater continuous length of service in the Mediapolis Community School District.

(Emphasis added.)

Comparisons of the relative value of several teachers to the school district do not

lend themselves well to any legal, mathematical, or scientific means of resolution. Courts should, therefore, be reluctant to act as super school boards by viewing each facet of a given teacher's skill, experience, or ability and weighing them against those of other teachers. It is under circumstances such as these that the rationale of the rule, that we are to give weight to the findings of the board, becomes apparent. *See* § 279.18.

Having made these observations, we proceed to look at the evidence presented to the board. The superintendent testified he had first tried to meet the budget problem by natural attrition of the staff members and by seeking to renegotiate the salary terms of the master contract. Failing these, he began to consider who among the teaching staff must be terminated. A study was made to determine which of the teaching positions were least essential to the needs of the district, without regard to personalities. It was determined that a junior high English position, as well as others, fell within the category of "least needed" positions. Smith was a junior high English teacher. A study was made, through several administrative meetings, as to each of the criteria of the master contract relating to the staff-reduction procedures. The superintendent, with the assistance of his principals, compared each teacher with regard to the needs of the district and the skill, ability, competence, certification, qualifications and experience of the available teachers. He testified that all teachers considered were evaluated for all positions for which Smith was certified to teach, and a comparison was made as to the endorsement and approval elements bearing on their certification.

The superintendent further testified that the plaintiff had only an elementary endorsement and lacked the necessary approvals to teach beyond the eighth grade. As a result, the plaintiff was less "mobile" than other teachers, that is, she was less capable of reassignment within the school district. In addition to the testimony of the superintendent, exhibits showing the relative certifications were received in evidence by the board. Smith and the others recommended for termination did not present any evidence to the board.

■ We do not agree with the district court that the decision of the board was unsupported by a preponderance of the evidence. The superintendent's recommendation for termination, while in part the result of subjective evaluation, was not, as Smith contends, unsupported by a preponderance of the evidence.

III. *The Confidentiality Issue.*

During Smith's cross-examination of the superintendent, he was asked about the qualifications of other teachers who were not involved in the hearing and who were not proposed to be terminated. Counsel for the district objected to this questioning as violative of the confidentiality provisions of Iowa Code section 68A.7(11). The board sustained the objection, and, thereupon, Smith's attorney informed it that she was proceeding with the balance of the hearing under protest, because: they needed information about other teachers in order to assess the superintendent's opinion concerning their qualifications in relation to Smith's. She makes the same argument on appeal, in effect that it was necessary for the board to have that information before it in order to make a decision based upon a preponderance of the evidence.

While Iowa Code section 68A.7(11) clothes the "personal information in confidential personnel records of ... school district" with confidentiality, it is also clear they may be reached by a court order, section 68A.7; *Brown v. Johnston,* 328 N.W.2d 510, 512 (Iowa 1983) or by an administrative subpoena, *Iowa Civil Rights Commission v. City of Des Moines,* 313 N.W.2d 491, 495 (Iowa 1981). *See also Head v. Colloton,* 331 N.W.2d 870, 876 (Iowa 1983).

Here, the superintendent acknowledged that he had received "a subpoena." Although it is not clear, we assume the subpoena was issued under section 279.16, which provides that

[t]he board shall cause subpoenas to be issued for such witnesses and the production of such books and papers as either the board or the teacher may designate. The subpoenas shall be signed by the presiding officer of the board.

■ We do not address Smith's argument that she was entitled to access to these confidential files through use of the subpoena, because she failed to pursue the means of enforcing the subpoena provided by statute:

In case a witness is duly subpoenaed and refuses to attend, or in case a witness appears and refuses to testify or to produce required books or papers, the board shall, in writing, report such refusal to the district court of the county in which the administrative office of the school district is located, and the court shall proceed with the person or witness as though the refusal had occurred in a proceeding legally pending before the court.

Iowa Code § 279.16. No application was made by Smith to require the board to obtain district court intervention to force compliance with the subpoena. Under these circumstances, she has waived her right to insist on compliance with it. We also note in this regard that the parties stipulated at the outset of the board hearing that "any documentation and lists of persons to be exchanged between the parties as contemplated by Section 279.15, Code of Iowa, has been so exchanged...." The sufficiency of the evidence supporting the board's ruling is not affected by the unavailability of the records under these circumstances.

The district court erred in concluding the board's action was unsupported by a preponderance of the competent evidence. We reverse and remand to the board for entry of its order terminating the contract of employment. See § 279.18.

REVERSED AND REMANDED.